1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    TAI T. VO,                                    No. C 04-01387 SI

9              Plaintiff,                           **ORDER GRANTING PLAINTIFF'S**
                                                    **MOTION FOR SUMMARY JUDGMENT;**
10     v.                                           **DENYING DEFENDANT'S MOTION FOR**
                                                    **SUMMARY JUDGMENT; AND**
11   JOANNE B. BARNHART,                            **REMANDING TO AGENCY**

12             Defendant.
     _____/
13

14          Plaintiff Tai Thanh Vo filed a complaint with this Court seeking judicial review of the decision of the

15   Administrative Law Judge ("ALJ") finding that Vo is not disabled and denying his application for Supplemental

16   Security Income ("SSI").  Vo has filed a motion for summary judgment and defendant has filed a cross motion

17   for summary judgment.  Having carefully considered the papers submitted, the Court hereby GRANTS

18   plaintiff's motion (Docket No. 14) and DENIES defendant's motion for the reasons set forth below.  (Docket

19   No. 15).

20

21

22                                    **BACKGROUND**

23          On May 22, 2001, Vo filed an application for SSI, which identified the onset date of his disabling

24   condition as May 1, 1998.  *See* Court Transcript (Tr.) 50-51.  In his initial SSI application, Vo alleged that

25   various impairments such as depression with anxiety, sleep-related problems, and dizziness, limited his ability

26   to work.  *See* Tr. 64.  Vo alleged that although he cared for his disabled wife and minor children, his disability

27   caused him to have trouble with performing these daily tasks.  *See* Tr. 80-81.

28          Since 1996, Vo has submitted to several mental and psychological evaluations by a number of medical

United States District Court
For the Northern District of California

professionals.[1]  Of most relevance to the pending motions is the psychological evaluation performed by Ubaldo F. Sanchez, Ph.D.[2]  Based on test results and behavioral observations made during the evaluation, Dr. Sanchez diagnosed Vo with "psychotic disorder, not otherwise specified."  *See* Tr. 215.  In light of his performance on the Wechsler Adult Intelligence Scale-III (WAIS-III) test, Dr. Sanchez observed plaintiff was currently functioning in the lower limits of the borderline range of measured intelligence.  Vo obtained a verbal IQ score of 80, a full performance IQ score of 67, and a full scale score of 72 on the WAIS-III.  *Id.*  Dr. Sanchez noted that these scores "need to be interpreted with caution given the cultural bias of WAIS-III."  *Id.*  He also opined that although Vo was not limited in performing daily activities such as bathing, dressing, and eating, he would have difficulty being socially appropriate, and he would have difficulty concentrating, focusing and keeping up with the pace of a working environment given his allegation of auditory hallucinations.  *See id*.

In August 2001, the Social Security Administration ("SSA") denied Vo's application for SSI.  *See* Tr. 37-40.  Vo filed a "Request for Reconsideration" in November 2001, and the SSA responded by re-reviewing his claim in April 2002.  *See* Tr. 41, 43.  After the SSA reaffirmed its decision to deny benefits, Vo filed a "Request for Hearing by Administrative Law Judge" on April 29, 2002.  *See* Tr. 47.  Vo's request was granted and an ALJ held a hearing in November 2002, during which Vo represented himself with the assistance of a Vietnamese interpreter.  *See* Tr. 328-46. After this initial hearing, an individual who was not an attorney was appointed to represent Vo.  *See* Tr. 16, 29.  Vo's representative submitted an opening and closing statement to the ALJ in which she contended that plaintiff qualified as disabled because he met Listing 12.05, Mental

---

[1]  Plaintiff alleged additional impairments, which have been documented in medical examinations and evaluations.  *See* Opening Statement of Helen Yoon, Tr. 115-20.  He suffers from auditory hallucinations, insomnia, hearing difficulties, blurred vision, poor memory, inability to concentrate, and other ailments.  *See id.*  Dr. Ly Nguyen diagnosed plaintiff with Psychotic Disorder on November 14, 1996.  *See* Tr. 131.  Dr. Robert E. Lee diagnosed plaintiff with Paranoid Schizophrenia on August 14, 2001.  *See* Tr. 217.  Howard Hansell, M.D. diagnosed plaintiff with Anxiety Disorder on February 4, 2002.  *See* Tr. 275-76.  Huong Hoang, a licensed clinical social worker (LCSW), diagnosed plaintiff with Generalized Anxiety Disorder in January 2002.  *See* Tr. 244.  Plaintiff has also been treated for physical impairments including vertigo, hypertension, hearing loss.  *See* ALJ's Opinion for synopsis, at Tr. 18-20.

[2]  In July 2001, the Department of Social Services Disability Evaluation Division referred plaintiff to Dr. Sanchez for a psychological evaluation.  *See* Tr. 211-16.  The purpose of the evaluation was to assess plaintiff's current intellectual, cognitive, psychological and emotional states, and how they might affect his ability to work.  *See* Tr. 211.  In addition to observing plaintiff's behavior, Dr. Sanchez administered the following tests with the aid of an interpreter: Bender Visual Motor Gestalt Test, Reyes 15 Items Memory Test III, Wechsler Adult Intelligence Scale III, and Weschsler Memory Scale III.

1    Retardation. *See* Tr. 115-26.[3]

2        In a decision dated April 11, 2003, the ALJ concluded that Vo was not eligible for SSI payments. *See*

3    Tr. 16-22.  The ALJ performed the requisite five-step evaluation pursuant to 20 C.F.R. § 416.920,[4]  and

4    concluded in step one that Vo has not engaged in substantial gainful activity since the alleged onset of disability,

5    and in step two that Vo has an impairment or combination of impairments considered "severe" based on the

6    requirements contained in § 416.920(b).  *Id.* at 21.  However, the ALJ determined in step three that Vo's

7    impairment did not "meet or equal" Listing 12.05.  In so concluding, the ALJ rejected Vo's full performance

8    IQ score of 67, which falls within the range of IQ scores to establish mental retardation under Listing 12.05.

9    The ALJ then evaluated plaintiff's impairments under step four and found that plaintiff was not prevented from

10   performing past relevant work and thus, was not disabled.  *See* Tr. 18.

11       In February 2004, plaintiff's "Request for Review of Hearing Decision/Order" was denied by the SSA

12   Appeals Council.  *See* Tr. 5-7, 10.  After exhausting all administrative remedies, Vo filed an action in this Court

13   in April 2004.

14       Now before the Court are the parties' cross-motions for summary judgment.  Vo argues that the ALJ

15   erroneously determined he did not meet step three of 20 C.F.R. § 416.920, and that his rejection of Vo's full

16   performance IQ score is not supported by substantial evidence.  Defendant contends that the ALJ's decision

17   is supported by substantial evidence in the record and is free from legal error.

18

19

20   **LEGAL STANDARD**

21       The district court's review of an appeal from the SSA is limited to the Social Security Commissioner's

22   ―――――――――――――

23       [3]  This was the first time plaintiff claimed disability under Listing 12.05 Mental Retardation.  In his
original SSI application, he alleged disability associated with depression with anxiety, sleep related problems,
24   and dizziness. *See* Tr. 64.

25       [4]  The five steps are: (1) Is claimant presently working in a substantially gainful activity?  If so, then
claimant is not disabled.  If not, proceed to step two; (2) Is claimant's impairment severe?  If so, proceed to
26   step three.  If not, claimant is not disabled.  (3) Does the impairment "meet or equal" one of a list of specific
impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, claimant is disabled and the inquiry ends.
27   If not, proceed to step four; (4) Is claimant able to do any work that he has done in the past?  If so, claimant
is not disabled.  If not, proceed to step five; (5) Is claimant able to do any other work?  If so, then claimant is
not disabled.  If not, then claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Bustamante*
28   *v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

final decision, as reflected in the transcript lodged by the Commissioner pursuant to the standing procedural order. *See* 42 U.S.C. § 405(g). A district court may disturb the Commissioner's decision "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The proper inquiry is to consider whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. *See id.*; *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the factual findings are supported by substantial evidence, the Court must consider whether the Commissioner based his decision on improper legal standards. A decision must be set aside if it was based on legal error. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). However, a decision of the ALJ will not be reversed for errors that are harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

## DISCUSSION

The parties' motions for summary judgment primarily focus on whether the ALJ erred when he determined, in step three of the analysis, that none of Vo's impairments, alone or in combination, met or equaled a listed impairment as set forth in Appendix 1, Subpart P. Regulation No. 4. Before the ALJ, Vo contended that he met or equaled the conditions for mental retardation, as defined in Listing 12.05C or D of 20 C.F.R. Part 220, Appendix 1. The pertinent provisions of Listing 12.05 define mental retardation as:

> [S]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . before age 22 . . . . C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function; or D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C-D.

4

**United States District Court**
For the Northern District of California

1. **The ALJ's Rejection of Vo's Full Performance IQ Score**

The ALJ concluded that Vo did not meet or equal Listing 12.05 based on his rejection of Vo's full performance IQ score.[5]  The ALJ's decision stated,

> On March 14, 2003, Helen Yoon, claimant's representative submitted a closing statement brief arguing that a Full Performance IQ of 67 allows the claimant to meet 12.05C and 12.05D (Ex. 11E).  However, the psychological consultive examiner shows other IQs are a good deal higher and indicated that all scores must be viewed with caution since claimant's cultural background varies from the population the WAIS-III was normed on (Ex. 5f/5).  Therefore, the Undersigned rejects the IQ score of 67.

Tr. 20.  Thus, the ALJ provided two reasons for rejecting Vo's full performance IQ of 67: (1) because his other IQ scores "are a good deal higher"; and (2) because Dr. Sanchez "indicated that all scores must be viewed with caution since claimant's cultural background varies from the population the WAIS-III was normed on."  *Id.*

Vo contends that the ALJ's rejection of his full performance IQ of 67 violates the regulations, which provide that "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, *we use the lowest of these in conjunction with 12.05*."  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, §12.00D(6)(c) (emphasis added); *see also Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003).  The Court agrees that to the extent the ALJ rejected Vo's full performance IQ score simply on the basis that Vo's other IQ scores were higher, the ALJ committed legal error.  *Id.*

An ALJ may reject an IQ score if the ALJ finds the score is invalid or inconsistent with the record.  *See Markle*, 324 F.3d at 187.  Section 12.00D(6) of the regulations, which contains guidelines for using intelligence tests as evidence of mental retardation, directs the ALJ to "comment on whether the IQ scores are considered valid and consistent with the developmental history and degree of functional limitation" of the claimant.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(a).  Defendant contends that the ALJ's rejection of Vo's full

---

[5]  Presumably because he concluded Vo was not mentally retarded, the ALJ did not address whether any mental retardation manifested itself prior to age 22.  Defendant's contentions in this regard are discussed *infra*.  Although the ALJ did address, in step three, whether Vo had a "physical or other mental impairment imposing an additional and significant work-related limitation or function," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C-D, the Ninth Circuit has held that a finding of severe impairment in step two automatically establishes that a claimant has a "physical or other mental impairment imposing an additional and significant work-related limitation or function."  *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987).

United States District Court
For the Northern District of California

1   performance score is supported because Dr. Sanchez stated that Vo's "scores must be viewed with caution."

2   Defendant argues that the ALJ logically inferred from Dr. Sanchez's statement that all of Vo's scores, including

3   the full performance IQ score, should be higher than they actually were due to cultural bias, and thus is was

4   proper for the ALJ to reject Vo's full performance IQ score.

5          Defendant's contentions lack merit.  Dr. Sanchez's statement that "all scores must be viewed with

6   caution" is not tantamount to stating that the IQ scores are invalid.  If the scores were invalid, presumably Dr.

7   Sanchez would have said that they were invalid.  Moreover, while it may be the case that Dr. Sanchez was in

8   fact suggesting that all of Vo's IQ scores were artificially deflated due to cultural bias, it is equally possible that

9   Dr. Sanchez meant something different by this statement.  While Dr. Sanchez's statement is ambiguous, it does

10  not provide a basis for rejecting Vo's full performance IQ score.  "An ALJ cannot reject IQ scores based on

11  . . . speculative inferences drawn from the record." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000); *see*

12  *also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  Instead, when presented with an ambiguity

13  in the record, particularly one that goes to the heart of a claimant's case, an ALJ has a duty to "conduct an

14  appropriate inquiry" to resolve the ambiguity.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

15  2001) (internal citations omitted).  Here, the ALJ could have requested further clarification from Dr. Sanchez

16  or another psychiatric expert, and/or he could have requested that Vo take a different IQ test less susceptible

17  to cultural bias, such as those listed in 20 C.F.R. § 12.00(D)(6)(d).

18         Alternatively, the ALJ could have rejected Vo's full performance IQ score if he found that it was

19  inconsistent with Vo's level of adaptive functioning and how he performed activities of daily living and social

20  functioning.  *See* 20 C.F.R. § 12.00(D)(6)(e).  Defendant argues that although the ALJ did not explicitly reject

21  Vo's full performance IQ score on this basis, "the inconsistency is evident from the ALJ's thorough discussion

22  of plaintiff's daily activities."  Def's Motion for Summary Judgment at 4:25-26.

23         As an initial matter, the Court finds it would be improper to uphold the ALJ's rejection of Vo's full

24  performance IQ score on the basis of a reason that is only arguably implicit in the ALJ's decision.  *Cf.*

25  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (noting that "we are wary of speculating about

26  the basis of the ALJ's conclusion – especially when his opinion indicates that the conclusion may have been

27  based exclusively upon an improper reason.").  Here, the ALJ gave two invalid reasons for rejecting Vo's full

28

**United States District Court**

For the Northern District of California

performance IQ, and he does not state anywhere in the decision that his rejection of the IQ score is based on Vo's ability to perform daily activities.

However, even if the Court considered the ALJ's discussion of Vo's daily activities as a basis for rejecting Vo's full performance IQ score, the Court concludes that the record does not support such a conclusion. The Court finds *Markle v. Barnhart*, 324 F.3d 182 (3d Cir. 2003), and *Brown v. Secretary of Health and Human Services*, 948 F.2d 268 (6th Cir. 1991), instructive. In *Markle*, the ALJ had rejected a claimant's IQ score on the ground that the claimant could, *inter alia*, pay his own bills, add and subtract, use an ATM machine, take care of all of his own personal needs, and identify and administer his own medication. *See Markle*, 324 F.3d at 184-86. The ALJ also found it significant that the plaintiff had obtained a general equivalency diploma, and that he was able to perform a wide range of simple, routine and repetitive light work. *Id.* at 185-86. The Third Circuit concluded that the ALJ's rejection of the IQ score was not supported by substantial evidence, noting that there was no expert opinion of a psychologist or a medical person to contradict the IQ findings. *Id.* at 187. The court also held that the various activities in which the plaintiff was able to engage are not inconsistent with qualifying mental retardation. *Id.* The court reversed and remanded for the SSA to determine whether the claimant's mental retardation had manifested before age 22. *Id.* at 189.

Similarly, in *Brown v. Secretary of Health & Human Services*, the ALJ rejected a claimant's full scale IQ score of 68 on the ground that the claimant had a driver's license, visited friends, possessed limited literacy and a sixth grade education, was able to make change, used public transit, did his own laundry and cleaned his room. *See Brown*, 948 F.2d at 270. The ALJ noted that when the plaintiff worked as a truck driver, he read a road atlas and recorded mileage, the hours he worked, and the places he drove. *Id.* The Sixth Circuit reversed, holding these facts were not inconsistent with a valid IQ of 68. *Id.* The court noted that the Diagnostic and Statistical Manual of Mental Disorders stated that persons with mild mental retardation achieve social and vocational skills adequate for self-support, and that most individuals are able to live successfully in the community. *Id.* at 270. The court also noted that if the ALJ had any doubts about the validity of the plaintiff's IQ score, he could have administered a second IQ test, which he did not. *Id.* The court remanded to the SSA to determine whether the plaintiff's mental retardation manifested before age 22. *Id.* at 271.

Here, the ALJ noted that Vo takes care of his disabled wife and their two small children, takes public transportation, does household chores such as cooking and laundry, and is responsible for paying the family's bills. Tr. 18-19.[6]   The ALJ adopted the assessment of the State Agency physicians that Vo could perform simple routine tasks with limited public interactions.  Although the ALJ stated that Vo had a 12th grade education, Tr. 17, Vo's closing statement submitted to the ALJ states that he has a 10th grade education from Vietnam.  Tr. 122. The ALJ also noted that Vo's past work included employment as a handpresser and as an in-home care provider.  Tr. 17.  Vo's closing statement states that Vo worked as a handpresser for less than six months in 1999.  Tr. 125.

Applying the analysis of *Markle* and *Brown* to the instant case, the Court concludes that even if ALJ implicitly rejected Vo's full performance IQ score as being inconsistent with his ability to perform activities of daily living, such a conclusion is not supported by substantial evidence.  As in *Markle* and *Brown*, the fact that Vo performs basic household chores and takes public transportation is not inconsistent with mental retardation. His ability to take care of himself, his children and his wife,  although certainly physically and emotionally demanding, is no indication of the intellectual demands of those activities and is also not inconsistent with being mentally retarded.  The ALJ made no assessment regarding the time it took the plaintiff to complete the daily tasks mentioned nor did the ALJ consider the ease or difficulty with which plaintiff performed them.

Accordingly, the Court remands to the agency for further proceedings to determine whether Vo meets listing 20 C.F.R. § 12.05.  On remand, the agency may, *inter alia*, request further clarification  regarding the interpretation of Vo's IQ scores or require Vo to take a different IQ test, such as one of the tests listed in 20 C.F.R. § 12.00(D)(6)(d).

## 2.    Manifestation of Sub-Average Mental Functioning Before Age 22

Defendant also contends that the Court should uphold the ALJ's decision on the separate and independent basis that Vo failed to meet the first prong of Listing 12.05, which requires a showing that his sub-

---

[6] The ALJ noted these facts, but did not explicitly adopt them.  Indeed, even though defendant argues that the ALJ implicitly rejected Vo's full performance IQ score due to Vo's ability to perform activities of daily living, the fact that the ALJ did not make explicit factual findings to support such a conclusion further complicates the Court's consideration of defendant's argument.

average mental functioning manifested itself before age 22.  However, because the ALJ did not find that Vo had a sufficiently low IQ to qualify for a § 12.05 listed impairment, he did not inquire into whether Vo's mental retardation was initially manifested during his developmental period.  The Court remands to the agency for it to determine this issue in the first instance.  *See Markle*, 324 F.3d at 189; *Brown*, 948 F.2d at 271.  The Court notes that the ALJ may well believe on remand that he should develop the record further – as is his duty – and inquire further into the nature of Vo's education and experience in Vietnam, or obtain an expert opinion as to the likely onset of the retardation.  *See generally Markle*, 324 F.3d at 188-89.

### CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and REMANDS the case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated:  January 2,  2006

_____
SUSAN ILLSTON
United States District Judge

**United States District Court**
For the Northern District of California

9